IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
:
PATRICIA A. YOUNG, : CHAPTER 13
:
Debtor : CASE NO. 1-12-bk-06245 RNO

**OPINION**

An unsecured creditor objected to confirmation of the Debtor's Chapter 13 Plan, alleging a lack of good faith. For the reasons hereinafter stated, I overrule the objection and find that the subject plan is eligible for confirmation.

**I.  Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**II.  Facts**

The Debtor, Patricia A. Young ("Young" or "Debtor"), filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code on October 24, 2012. A Chapter 13 Plan ("Plan") was also filed on October 24, 2012.

On January 16, 2013, an objection to confirmation of the Plan was filed by Patrick J. Bethas ("Bethas"), the Debtor's former husband. On January 23, 2013, Charles J. DeHart, III, the Standing Chapter 13 Trustee, filed an objection to confirmation of the Plan. The Trustee's objection to confirmation was subsequently withdrawn on April 30, 2013.

The Bethas Objection is the only remaining opposition to confirmation of the Plan. The Objection alleges that the Petition and Plan were not filed and proposed in good faith. It alleges, in part, that the Debtor ". . . shielded equity in her assets . . .". Bethas Obj. to Ch. 13 Plan, ¶ 3.

On November 4, 2013, the Debtor and Bethas filed a Stipulation of Undisputed Facts.

Memoranda of Law have been filed in support of the objection to Plan and in support of confirmation of the Plan. An evidentiary hearing was held on November 6, 2013; Young testified at the evidentiary hearing.

The Objection to Plan is now ripe for decision.

**III.    Stipulated Facts**

I make the following findings of fact based upon the parties' Stipulation of Undisputed Facts. Young and Bethas were married on October 25, 1997, and Bethas filed for divorce on February 27, 2007. On March 10, 2007, Bethas and Young executed a Marriage Settlement Agreement ("Marriage Settlement Agreement"). Pursuant to the Marriage Settlement Agreement, Bethas subdivided the marital real property and constructed a home on the outparcel for Young. The outparcel was conveyed to Young.

The Marriage Settlement Agreement provided, in part:

> It is specifically agreed between the parties that if Wife [Debtor] desires to sell the residence constructed for her by Husband [Bethas] prior to their daughter _____ reaching her 18th birthday, Husband [Bethas] shall be reimbursed the amount of $175,000.00. . . . If net proceeds are not available in sufficient amount to pay Husband [Bethas], said amount will become a lien against the property and will need to be satisfied in some fashion by Wife [Debtor] prior to the sale of the marital residence.

Marriage Settlement Agreement 7.

After her divorce from Bethas, on July 25, 2008, the Debtor married Mark Young. Young and her second husband applied for a mortgage loan against the property which the Debtor received pursuant to the Marriage Settlement Agreement. It is stipulated that the lender required transfer of the real property into the joint names of the Debtor and her husband, Mark Young. The lender also required Mark Young's joinder in the mortgage loan. The property was

2

conveyed into the names of the Debtor and Mark Young, as husband and wife.

On October 13, 2008, the Debtor and Mark Young completed the first mortgage transaction and a mortgage in the amount of $150,000.00 was placed on the jointly owned property. The loan proceeds were used, in part, to pay debts of the Debtor and Mark Young and, in part, to finance the construction of a three bay garage on the parcel.

Bethas filed suit against the Debtor in the Court of Common Pleas of York County alleging that the deed transfer, which gave Mark Young a joint interest in the property, was a "sale" within the meaning of the Marriage Settlement Agreement. On or about December 10, 2009, the Debtor and Mark Young obtained a home equity line of credit in the amount of $50,000.00 which was secured as a second mortgage on the jointly held property. The Debtor and Mark Young drew approximately $30,000.00 on the home equity line in part to complete construction of the three bay garage and in part to cover maternity related expenses associated with the birth of their child.

Subsequently, the Court of Common Pleas of York County ruled that the transfer by Debtor to Mark Young as a joint interest was not a sale and that Section 7.04(b) of the Marriage Settlement Agreement had not been breached. After appeal by Bethas, the Court of Common Pleas was reversed by the Superior Court of Pennsylvania which held that the transfer of a joint interest to Mark Young was indeed a sale, thereby triggering the Debtor's obligation to pay Bethas the sum of $175,000.00. Thereafter, the Court of Common Pleas of York County entered judgment in favor of Bethas and against the Debtor in the amount of $175,000.00. Additionally, it entered a separate judgment in favor of Bethas and against the Debtor in the amount of $17,834.56.

It is stipulated that the Debtor and Bethas were unable to amicably resolve their differences. On October 17, 2012, Bethas conducted a deposition of the Debtor in aid of execution. As noted above, the Chapter 13 Petition was filed on October 24, 2012. The scheduled unsecured obligations include Bethas, a claim for attorney's fees for $1,700.00, a charge account for $37.00, two laboratory bills totaling approximately $315.00, and three non-dischargeable student loan obligations totaling approximately $13,300.00.

## III. Discussion

### A. Requirement that Plan was Proposed in Good Faith

One of the requirements for confirmation is "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).[1] As noted above, Bethas' Objection alleges a lack of good faith in proposing the Plan.

Bethas argues that the construction of the new garage on the now jointly owned outparcel was a "luxury purchase". He also argues that the primary purpose of the bankruptcy filing was to discharge the large debt owed to Bethas and to frustrate the state court proceedings. Bethas Mem. in Supp. of Obj. to Plan 3.

The Debtor counters that she had no reason to believe that adding her husband, Mark Young, to the property would be deemed a triggering "sale" under the Marriage Settlement Agreement. The Debtor further argues that consideration of the traditional factors demonstrate the Debtor's good faith. Debtor's Mem. in Supp. of Confirmation of Ch. 13 Plan 2, 9.

What are the applicable standards to determine whether a plan has been proposed in good

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

4

faith when considering a § 1325(a)(3) objection? There is no explicit definition of "good faith" in the Third Circuit. *Jensen v. Froio (In re Jensen)*, 369 B.R. 210, 233 (Bankr. E.D. Pa. 2007).

It is well established in the Third Circuit that a fact intensive totality of the circumstances test is applicable to motions to dismiss a Chapter 13 case pursuant to § 1307(c). *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007); *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996).

I have previously held that the same totality of the circumstances test should be used for deciding a good faith objection to confirmation of a Chapter 13 plan. *Members First Fed. Credit Union v. Fickel (In re Fickel)*, 2008 WL 1710102 at *2 (Bankr. M.D. Pa. Apr. 10, 2008).

The Third Circuit has summarized the totality of the circumstances standard:

> The Bankruptcy Court looks to the totality of the circumstances to determine bad faith, and may consider a wide range of factors, including, "the nature of the debt . . .; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors".

*In re Myers*, 491 F.3d at 125, citing *In re Lilley*, 91 F.3d at 496. I also note that Young has the burden to demonstrate, by a preponderance of the evidence, that the Plan is proposed in good faith. *In re Norwood*, 178 B.R. 683, 687 (Bankr. E.D. Pa. 1995); *In re Cope*, 2010 WL 376380 at *4 (Bankr. E.D. Pa. Jan. 26, 2010); *In re Fickel*, 2008 WL 1710102, at *3.

I will next evaluate the Plan in light of the factors outlined in *Myers* and *Lilley*.

1. **Nature of the Debtor's Debt and How It Arose**

Pursuant to Federal Rule of Evidence 201, I take judicial notice of the documents on the docket in Young's Chapter 13 bankruptcy. *Jou v. Adalian (In re Adalian)*, 500 B.R. 402, 406 (Bankr. M.D. Pa. 2013); *Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 757,

5

N.8 (Bankr. E.D. Pa. 1996).

Young's schedules include secured debt totaling $171,231.00. I conclude that all of her debt, secured and unsecured, is consumer debt incurred primarily for personal family or household purposes. 11 U.S.C. § 101(8); *In re Miller*, 335 B.R. 335, 339 (Bankr. E.D. Pa. 2005).

Bethas is not Young's only unsecured creditor, he is one of five scheduled unsecured creditors. Bethas does hold approximately 93% of the total dollar amount of unsecured claims.

Bethas questions the necessity of the construction of the new three bay garage on the property which the Debtor owns with Mark Young. Young testified that the new garage was constructed, in part, so that her husband, Mark, could discontinue rental of a garage in Sunbury, Pennsylvania where he was storing personal property. Trial Tr. vol. 1, 9, Nov. 6, 2013. The Debtor also testified that the existing, attached garage to their home was not tall enough to garage Mark Young's work vehicle. Trial Tr. vol. 1, 20, Nov. 6, 2013.

I conclude that the cost of the construction of the new garage was not an improper eve of bankruptcy purchase. I also find that the garage does not constitute a luxury item, as argued by Bethas. I find that the cost of construction to house Mark Young's work vehicle, in addition to the family's other vehicles and possessions, can be readily contrasted to decisions involving luxury purchases. See *In re Holmes*, 496 B.R. 765, 775 (Bankr. M.D. Pa. 2013) (charging hundreds of dollars for vacation during look back period); *In re LaBovick*, 355 B.R. 508, 516 (Bankr. W.D. Pa. 2006) (gold chain and watch as well as gift cards would constitute luxury goods).

Young testified that she has not been on vacation in years. Trial Tr. vol. 1, 10, Nov. 6,

6

2013. She also testified that she gave birth on October 10, 2008. She lacked health insurance, so all the medical expenses were paid out of pocket. Trial Tr. vol. 1, 10, Nov. 6, 2013. Young now has a total of six children. Trial Tr. vol. 1, 7, Nov. 6, 2013. There is nothing in the record to support a finding that Young is living extravagantly.

It must also be noted that the second mortgage home equity line of credit was closed on or about December 10, 2009; more than two and a half years before the Chapter 13 petition was filed.

I believe it is also important to discuss how the Debtor's obligation to Bethas was incurred. Young testified that she was not represented by counsel when she was divorced from Bethas. Trial Tr. vol. 1, 5, Nov. 6, 2013. Young was questioned about the provision in paragraph 7.04(b) of the Marriage Settlement Agreement which required reimbursement of $175,000.00 to Bethas if she sold the residence constructed for her. She testified, in part:

> My understanding of the sale is that I no longer have ownership of the property. There was no discussion between Patrick Bethas, his attorney, or myself as far as what they constituted as a sale in their mind. In my mind, it was that I did not own the property anymore.

Trial Tr. vol. 1, 5-6, Nov. 6, 2013. I generally found Young to be a cooperative and credible witness. I find it credible that a layperson would not understand that preparing a deed from herself to herself and her new husband would constitute a "sale" triggering the reimbursement obligation to Bethas in the amount of $175,000.00.

There is no evidence that Young received any consideration from her husband, Mark Young, when he was added to the deed. Further, as noted above, this transfer was necessitated by the mortgage lender. A "sale" has been defined as "the transfer of property or title for a price". *Black's Law Dictionary*, 1337 (17th Ed. 1999). Additionally, the Marriage Settlement

7

Case 1:12-bk-06245-RNO    Doc 54    Filed 12/02/13    Entered 12/02/13 11:47:45    Desc
Main Document      Page 7 of 12

Agreement, presumably drafted by Bethas' divorce counsel, did not provide for Bethas to retain a mortgage or other encumbrance on the outparcel.

Today, I am not deciding the nature of Young's obligation to Bethas, which stems from the Marriage Settlement Agreement. I specifically make no findings as to whether the obligation is in the nature of a dischargeable equitable distribution claim, or a nondischargeable domestic support obligation.

I do conclude that this is not a case where the Debtor incurred the debt to Bethas based upon fraud. Nor can I find that she incurred the debt to Bethas without the intent to repay. Her obligation to Bethas was not volitional; the obligation was imposed by the Pennsylvania Superior Court's interpretation of the Marriage Settlement Agreement. I find that this factor slightly favors confirmation of the Plan.

### 2. Timing of the Petition and Debtor's Motive in Filing

The timing of the filing of a bankruptcy petition may contribute to a finding of an absence of good faith. It has been held that a Chapter 7 filing - by a debtor who had been separated for more than seven years and whose divorce was "right around the corner", according to the trustee - was filed in bad faith. It is noted that, in *In re Tamecki*, 229 F.3d 205 (3d Cir. 2000), the debtor's principal asset was his home, which had over $100,000.00 of equity, and was titled in the debtor and his estranged wife. It has also been held that bad faith may be found when a debtor has a frivolous, non-economic motive for filing a bankruptcy, or when there is an abuse of the judicial process. *In re Shula*, 280 B.R. 903, 905 (Bankr. S.D. Ala. 2001).

There is little in this record concerning Young's motive in filing or the timing of the filing of the bankruptcy petition. I conclude that the timing of the petition was largely motivated

8

by Bethas' efforts to collect on his pre-petition debt. It has been held that the filing of a Chapter 13 in close proximity to the entry of a judgment against the debtor is not a relevant factor in a good faith analysis. *In re March*, 83 B.R. 270, 276 (Bankr. E.D. Pa. 1988).

A review of Schedule I - Current Income of Individual Debtor and Schedule J - Current Expenditures of Individual Debtor portrays a tight family budget for Young and her husband, Mark. The schedules show that as of the petition date, both the Debtor and her husband, Mark, were working outside of the home and that, after expenses, their monthly net income totaled $100.39. This budget includes "family contributions" as income in the amount of $500.00 per month and I note the modest nature of certain expenses including $700.00 per month for food and $0.00 for recreation, clubs, and entertainment. It is significant that Young filed under Chapter 13, which should allow for some distribution to her unsecured creditors. My review of the schedules indicates that a hypothetical Chapter 7 liquidation would yield no distribution to unsecured creditors.

I find that there was no improper purpose in the Debtor's reasons for filing for bankruptcy. I do find that the timing of the filing of the petition was largely calculated to invoke the automatic stay pursuant to § 362(a). On balance, I consider this fact to be neutral on the question of confirmation of the Plan.

### 3. How the Debtor's Actions Affected Creditors and Debtor's Treatment of Creditors Before and After Filing

Before filing for Chapter 13 bankruptcy, Young paid off a significant amount of unsecured debt, including credit cards. She estimated that in late 2008, she paid approximately $60,000.00 toward such debt from a portion of the proceeds of the first mortgage loan. Trial Tr. vol. 1, 9, Nov. 6, 2013. It is also apparent that Young was engaged in contentious state court

9

litigation with Bethas before the bankruptcy filing. However, I do not find that she engaged in any vexatious conduct or pursued any frivolous arguments in the course of the pre-petition litigation. Nor is there any allegation of repetitive bankruptcy filings by Young.

Since the bankruptcy filing, I find that Young has fulfilled her general responsibilities to the creditors and the Court. For example, completed schedules of assets and liabilities were filed along with the Chapter 13 petition. The Plan was also filed on the October 24, 2012, petition date. The Debtor appeared at a 341 meeting conducted by the Standing Chapter 13 Trustee on December 20, 2012. There has been no suggestion that the Debtor has made a false oath or otherwise consciously misled her creditors or the Court since the Chapter 13 filing. There has been no suggestion of non-disclosure of assets.

The Debtor is a below median income debtor. The Plan provides for payments of $100.00 per month into a thirty-six month plan. While it would represent a minimal distribution to unsecured creditors, I find that it is a good faith attempt by the Debtor to make payments within her limited means.

I conclude that this factor weighs strongly in favor of confirming the Plan.

### 4. Whether the Debtor was Forthcoming with the Bankruptcy Court and Creditors

Much of the discussion regarding factor number 3 is relevant here as well. I find that the Debtor has made appropriate disclosure of her assets and liabilities. She appeared and testified at a 341 meeting and appeared and testified at the evidentiary hearing regarding Bethas' Objection to confirmation.

I find that this factor supports confirmation of the Plan.

### 5. Whether the Debtor Unfairly Manipulated the Bankruptcy Code or Abused the Spirit of Chapter 13

It has been said that:

> . . . the basic purpose and spirit of Chapter 13 is rehabilitation and repayment of debt by periodic payments made to a trustee under bankruptcy court protection, with the aim of providing honest, unfortunate and genuinely financially distressed debtors an opportunity to obtain a fresh start.

*In re McGovern*, 297 B.R. 650, 658 (S.D. Fla. 2003). It appears to the Court that Young, who was unrepresented at the time of her divorce from Bethas, became liable to him for a sum in excess of $192,000.00 based upon a state court appellate determination. There is nothing in the record that suggests Young has manipulated the bankruptcy process; by non-disclosure of assets, by living an extravagant lifestyle at the expense of her creditors, or by other means.

I conclude that this factor also supports confirmation of the Plan.

### B. Requirement that the Petition was Filed in Good Faith

Another requirement for confirmation of a Chapter 13 plan is the provision that a court shall confirm a plan if:

> The action of the debtor in filing the petition was in good faith.

11 U.S.C. § 1325(a)(7). It has been noted that § 1325(a)(7) simply evidences Congressional ratification of decisions, such as *In re Lilley*, imposing a good faith filing requirement in all Chapter 13 cases. *In re Dahlgren*, 418 B.R. 852, 858 (Bankr. D.N.J. 2009). The same basic standards apply for determining good faith, whether under the § 1325 confirmation standards or the § 1307 dismissal standards. *In re Dahlgren*, 418 B.R. at 857; *In re Fickel*, 2008 WL 1710102 at *2.

I will not repeat the same five factor test which I utilized in reviewing Bethas' Objection

under § 1325(a)(3). On balance, I find that the factors support a finding of good faith under § 1325(a)(3) and (a)(7).

C.  **Totality of the Circumstances**

After due consideration of the totality of circumstances presented herein, I conclude that Young has met her burden on the issues of good faith and, therefore, Bethas' Objection to confirmation are overruled. I find that the Plan meets the requirements for confirmation contained in § 1325.

An order will be entered consistent with the foregoing Opinion.

By the Court,

*[signature]*
_____
Robert N. Opel, II, Bankruptcy Judge
(BI)

Date: December 2, 2013

12